1  William M. Audet (SBN 117456)
   S. Clinton Woods (SBN 246054)
2  Ling Y. Kuang (SBN 296873)
      waudet@audetlaw.com
3     cwoods@audetlaw.com
      lkuang@audetlaw.com
4  AUDET & PARTNERS, LLP
      711 Van Ness Avenue, Suite 500
5     San Francisco, CA 94102-3275
      Telephone:   (415) 568-2555
6     Facsimile:    (415) 568-2556

7  *Attorneys for Plaintiff Alex Chernavsky, on
   behalf of himself and all others similarly situated*

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12  ALEX CHERNAVSKY, on behalf of himself        Case No:
    and all others similarly situated,
13                                               **CLASS ACTION COMPLAINT FOR:**
                     Plaintiffs,
14                                                 1.  **Violation of the Stored**
              vs.                                      **Communication Act;**
15
                                                   2.  **Invasion of Privacy;**
16  WELLS FARGO BANK, N.A.; and WELLS
    FARGO & COMPANY, a Delaware                    3.  **Negligence;**
17  Corporation,
                                                   4.  **Breach of Contract and Bailment;**
18                   Defendants.
                                                   5.  **Conversion;**
19
                                                   6.  **Intentional Violation of the Fair**
20                                                     **Credit Reporting Act;**

21                                                 7.  **Negligent Violation of the Fair**
                                                       **Credit Reporting Act;**
22
                                                   8.  **Declaratory Relief;**
23
                                                   9.  **Unjust Enrichment;**
24
                                                   10. **Violations of California's Consumer**
25                                                     **Legal Remedies Act;**

26                                                 11. **Violations of California's Unlawful**
                                                       **Competition Law; and**
27
                                                   12. **Violations of California's Consumer**
28                                                     **Records Act**

                                                 **JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT

A&P  AUDET & PARTNERS LLP

**INTRODUCTION**

Plaintiff ALEX CHERNAVSKY, individually and on behalf of all unknown plaintiffs, 1-1,000,000 ("Plaintiffs"), bring this class action complaint against Defendants WELLS FARGO BANK, NATIONAL ASSOCIATION, and WELLS FARGO & COMPANY, a Delaware Corporation (collectively, "Wells Fargo" or "Defendants"), on behalf of themselves and all others similarly situated to obtain damages, restitution and injunctive relief for the Class, as defined, below, from Defendants. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, and aver and allege as follows:

1.      Plaintiff Alex Chernavsky is a resident of California.

2.      Defendant Wells Fargo Bank, National Association, is, and at all times relevant hereto was, a national banking association chartered under the laws of the United States, with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank, National Association provides Wells Fargo & Company's personal and commercial banking services, and is Wells Fargo & Company's principal subsidiary.

3.      Defendant Wells Fargo & Company is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Delaware. Wells Fargo & Company is a financial services company with over $1.5 trillion in assets, and provides banking, insurance, investments, mortgage, and consumer and commercial finance through more than 9,000 locations, 12,000 ATMs, and via the Internet. It has approximately 265,000 full-time employees, and is ranked 29th on Fortune Magazine's 2014 rankings of America's 500 largest corporations.

4.      Wells Fargo boasts about the average number of products held by its customers. Whereas the average bank has three products per customer, Wells Fargo currently has approximately six bank accounts or financial products per customer. This was not enough, as Wells Fargo seeks to increase this to an average of eight bank accounts or financial products per account holder, a company goal Wells Fargo calls the "gr-eight" initiative. To reach this goal, Wells Fargo placed knowingly unrealistic and impossible sales quotas on their bankers.

5.     Wells Fargo sales quotas are difficult if not impossible for many bankers to meet without resorting to the abusive and fraudulent tactics described further below. Moreover, Wells Fargo enforces its sales quotas by constant monitoring. Daily sales for each branch, and each sales employee, are reported and discussed by Wells Fargo's District Managers four times a day, at 11:00 a.m., 1:00 p.m., 3:00p.m., and 5:00p.m. Those failing to meet daily sales quotas are approached and reprimanded by management. They are also told to "do whatever it takes" to meet their individual sales quotas.

6.     Consequently, in order to meet these sales quotas, Wells Fargo's managers and bankers have for years engaged in unethical and illegal practices called "gaming." Gaming consists of, among other things, opening and manipulating fee generating customer accounts through often unfair, fraudulent, and unlawful means, such as omitting signatures and adding unwanted secondary accounts to primary accounts without permission. Other practices utilized as part of these "gaming" schemes have included misrepresenting the costs, benefits, fees, and/or attendant services that come with an account or product, all in order to meet sales quotas.

7.     At all relevant times, each Defendant was acting as an agent, servant, assignee, representative, partner, joint-venturer, co-conspirator, or employee of the other Defendants, and, in doing the acts alleged herein, were actions within the course and scope of said agency, service, assignment, representation, partnership, joint venture, conspiracy, or employment. Due to the relationship between Defendants, each Defendant has knowledge or constructive notice of the acts of each of the other Defendants.

8.     In this Complaint, when reference is made to any act or omission of a Defendant, such allegations shall include the acts, and omissions of owners, officers, directors, agents, employees, contractors, vendors, affiliates, and representatives of said Defendant while acting within the course and scope of their employment or agency on behalf of said Defendant.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiffs claims' and the claims of the other members of the Class exceed

1    $5,000,000.00, exclusive of interest and costs, and there are numerous class members who are

2    citizens of states other than Wells Fargo's state of citizenship.

3        10.    This Court has personal jurisdiction over Wells Fargo because Wells Fargo is

4    authorized to do business in the State of California, and operates stores within this Judicial District

5    and Wells Fargo has significant continuous and pervasive contacts with the State of California, and

6    maintains numerous banking establishments and employees in the State of California, including,

7    upon information and belief, some of the 5,300 employees who were terminated by Wells Fargo for

8    engaging in the gaming tactic established by Wells Fargo.

9        11.    This Court has personal jurisdiction over Plaintiffs because they are residents of the

10    State of California.

11        12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part

12    of the events and/or omissions giving rise to the Plaintiffs claims and Class Member claims arise in

13    this action or occurred in this District and because Defendants are subject to personal jurisdiction in

14    this District.

15                            **GENERAL ALLEGATIONS**

16        13.    Upon information and belief, Wells Fargo is within the top thirty (30) of America's

17    largest corporations, ranked 29th on the Fortune 500 list of top American companies.

18        14.    In its 2014 Annual Report to the U.S. Securities and Exchange Commission, Wells

19    Fargo boasts about its "products" 'per customer and its "cross-sell strategy," "Our vision is to satisfy

20    all our customers' financial needs, help them succeed financially, be recognized as the premier

21    financial services company in our markets and be one of America's great companies. Important to

22    our strategy to achieve this vision is to increase the number of our products our customers use and

23    to offer them all of the financial products that fulfill their financial needs." That report further

24    states: "Our cross-sell strategy is to increase the number of products our customers use by offering

25    them all of the financial products that satisfy their financial needs".

26        15.    Wells Fargo stated in its 2014 Annual Report to the U.S. Securities & Exchange

27    Commission: "We believe there is more opportunity for cross-sell as we continue to earn more

28    business from our customers. Our goal is eight products per household…"

16.     Wells Fargo's central business plan is to attempt to get each customer to maintain numerous accounts with Wells Fargo. In a brochure published by Wells Fargo called "The Vision & Values: of Wells Fargo;" Wells Fargo states: "Going for gr-eight,' our average retail banking household has about six products with us. We want to get to eight… and beyond. One of every four already has eight or more. Four of every 10 have six or more."

17.     In order to achieve this goal of eight accounts per household, Wells Fargo imposes incredible pressure on its bankers to open numerous accounts per customer. Managers constantly hound, berate, demean and threaten employees to meet these strict and unreachable quotas. Employees who do not reach their quotas are often required to work hours beyond their typical work schedule without being compensated for that extra work time, and/or are threatened with termination.

18.     The quotas imposed by Wells Fargo on its employees are often unrealistic because there are not enough customers who enter or interact with a branch on a daily basis for employees to meet their quotas through traditional means.

19.     Wells Fargo's bankers are thus predictably forced to resort to alternative means to meet quotas, including using high-pressure sales tactics to coerce customers into opening additional accounts. Alternately, and more troublingly, bankers feel forced into using inaccurate or misleading information about potential accounts to induce customers to open them.

20.     Employees thus resort to gaming tactics to meet minimum quotas. Gaming is so ingrained in the business of Wells Fargo that many of the tactics, employed to meet these sky-high quotas have commonly used names. These gaming practices are so pervasive within Wells Fargo's business model that some methods of gaming are given their own names.

a.     "Sandbagging" refers to Wells Fargo's practice of failing to open accounts when requested by customers, and instead accumulating a number of account applications to be opened later. Specifically, Wells Fargo employees collect manual applications for various products, stockpile them in an unsecured fashion, and belatedly open up the accounts (often with additional, unauthorized accounts) in the next sales reporting period, frequently before or after banking hours, or on bank holidays such as New Year's Day.

b.      Pinning" refers to Wells Fargo's practice of assigning, without customer authorization, Personal Identification Numbers ("PINs") to customer ATM card numbers with the intention of, among other things, impersonating customers on Wells Fargo computers, and enrolling those customers in online banking and online bill paying without their consent.

c.      "Bundling" refers to Wells Fargo's practice of incorrectly informing customers that certain products are available only in packages with other products such as additional accounts, insurance, annuities, and retirement plans.

21.      Upon information and belief, Wells Fargo employees opened over 1,534,280 deposit accounts that may not have been authorized and that may have been funded through simulated funding, or transferring funds from consumers' existing accounts without their knowledge or consent.

22.      That analysis determined that roughly 85,000 of those accounts incurred about $2 million in fees. The fees included overdraft fees on linked accounts the consumers already had, monthly service fees imposed for failure to keep a minimum balance in the unauthorized account, and other fees.

23.      Section 1036(a)(1)(B) of the CFPA prohibits "unfair" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

24.      By opening unauthorized deposit accounts and engaging in acts of simulated funding, Wells Fargo caused and was likely to cause substantial injury to consumers that was not reasonably avoidable. This is because Wells Fargo's actions occurred without consumers' knowledge, and was not outweighed by countervailing benefits to consumers or to competition.

25.      Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. §5536(a)(1)(B). An act or practice is abusive if it materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service. 12 U.S.C. § 5531(d)(1). An act or practice is abusive if it takes unreasonable advantage of the inability of the

1    consumer to protect his or her interests in selecting or using a consumer financial product or

2    service. 12 U.S.C. § 5531(d)(2)(B).

3        26.    Wells Fargo's acts of opening unauthorized deposit accounts and engaging in

4    simulated funding materially interfered with the ability of consumers to understand a term or

5    condition of a consumer financial product or service, as they had no or limited knowledge of those

6    terms and conditions, including associated fees.

7        27.    Furthermore, Wells Fargo's acts of opening unauthorized deposit accounts and

8    engaging in simulated funding took unreasonable advantage of consumers' inability to protect their

9    interests in selecting or using consumer financial products or services, including interests in having

10   an account opened only after affirmative agreement, protecting themselves from security and other

11   risks, and avoiding associated fees.

12       28.    Therefore, Respondent engaged in "unfair" and "abusive" acts or practices that

13   violate §§ 1031(c)(1), (d)(1), (d)(2)(B), and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(c)(1),

14   (d)(1), (d)(2)(B), 5536(a)(1)(B).

15       29.    Wells Fargo's analysis concluded that its employees submitted applications for

16   565,443 credit-card accounts that may not have been authorized by using consumers' information

17   without their knowledge or consent. That analysis determined that roughly 14,000 of those accounts

18   incurred $403,145 in fees. Fees incurred by consumers on such accounts included annual fees and

19   overdraft-protection fees, as well as associated finance or interest charges and other late fees.

20       30.    Section 1036(a)(1)(B) of the CFPA prohibits "unfair" acts or practices. 12 U.S.C. §

21   5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial

22   injury that is not reasonably avoidable and is not outweighed by countervailing benefits to

23   consumers or to competition. 12 U.S.C. § 5531(c)(1).

24       31.    By applying for and opening credit-card accounts using consumers' information

25   without their knowledge or consent, Wells Fargo caused and was likely to cause substantial injury

26   that was not reasonably avoidable, because it occurred without consumers' knowledge, and was not

27   outweighed by countervailing benefits to consumers or competition.

28

32.     Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is abusive if it materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service. 12 U.S.C. § 5531(d)(1). Additionally, an act or practice is abusive if it takes unreasonable advantage of the consumer's inability to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

33.     Wells Fargo's pattern and practice opening credit-card accounts using consumers' information without their knowledge or consent materially interfered with the ability of consumers to understand a term or condition of a consumer financial product or service, as they had no or limited knowledge of those terms and conditions, including associated fees.

34.     Furthermore, Wells Fargo's pattern and practice of opening credit-card accounts using consumers' information without their knowledge or consent took unreasonable advantage of the consumers' inability to protect their interests in selecting or using a consumer financial product or service.

35.     Therefore, Wells Fargo engaged in "unfair" and "abusive" acts or practices that violate §§ 1031(c)(1), (d)(1), (d)(2)(B), and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(c)(1), (d)(1), (d)(2)(B), 5536(a)(1)(B).

36.     During the Relevant Period, Wells Fargo's employees used fake email addresses or addresses not belonging to consumers to enroll consumers in online-banking services without their knowledge or consent. Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is abusive if it takes unreasonable advantage of the consumer's inability to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

37.     Wells Fargo's pattern and practice of enrolling consumers in online-banking services without their knowledge or consent took unreasonable advantage of consumers' inability to protect their interests in selecting or using a consumer financial product or service, including interests in having these products or services activated only after affirmative agreement and protecting themselves from security and other risks.

CLASS ACTION COMPLAINT

38.   Therefore, Wells Fargo engaged in "abusive" acts or practices that violate §§ 1031(d)(2)(B) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(d)(2)(B), 5536(a)(1)(B).

39.   During the Relevant Period, Wells Fargo's employees requested debit cards and created PINs to activate them without consumers' knowledge or consent. 35. Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is abusive if it takes unreasonable advantage of the consumer's inability to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

40.   Wells Fargo's acts of issuing debit cards to consumers without their knowledge or consent took unreasonable advantage of consumers' inability to protect their interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

41.   Therefore, Wells Fargo engaged in "abusive" acts that violate §§ 1031(d)(2)(B) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(d)(2)(B), 5536(a)(1)(B).

42.   Customers who complain about receiving credit cards they did not request are advised by Wells Fargo to simply destroy the unrequested and unauthorized cards: However; simply destroying these unauthorized cards does not close the account nor repair the impact to a customer's credit profile.

43.   Because of Wells Fargo's on-going setting of unrealistic sales goals, Wells Fargo employees have engaged in, and continue to engage in, other gaming tactics, including, but not limited to:

    a.   Making misrepresentations to customers to get them to open additional accounts such as falsely stating: "you will incur a monthly fee on your checking account until you add a savings account";

    b.   Misrepresenting that additional accounts do not have monthly fees, when they actually do incur such fees;

    c.   Referring unauthorized, and therefore unfunded, accounts to collections because, Wells Fargo's practices, cause the accounts to have negative balances;

d.      Wells Fargo sold heavy to individuals holding Mexican Matriculada Consular cards because the lack of a Social Security Number makes it easier to open numerous fraudulent accounts;

e.      Advising customers who do not want credit cards that they will be sent a credit card anyway, and to just tear it up when they receive it.

44.      Customers who have discovered unauthorized accounts often make the discovery accidentally. For instance: (a) unexplained money being withdrawn from authorized accounts to fund unauthorized accounts; (b) mailings from Wells Fargo congratulating a customer on opening a new account the customer does not recognize, or asking a customer to update account information for accounts that the customer does not recognize; (c) calls from collection agencies stating the customer is overdrawn on an account that the customer does not recognize; and (d) discovering that checks a customer intended to be deposited into an authorized account do not appear in monthly statements because the checks had instead been deposited into an unauthorized account.

45.      Customers have been prejudiced in numerous ways by Wells Fargo's gaming: (a) customers lose money to monthly service fees charged for unauthorized accounts; (b) customer accounts are placed into collection, forcing customers to fight with debt collection agencies for fees charged by Wells Fargo on unauthorized accounts; (c) customers' credit reports are impacting job applications, loans for automobiles, and mortgage applications; and (d) customers are forced to purchase costly identity theft protection services to ensure against further activities. But for Wells Fargo's quota-based business model, its customers would not have incurred wrongful fees, been put into collections, suffered derogatory references on their credit reports, or forced to purchase identity theft protection.

46.      Customers' unauthorized accounts remain open, despite repeated customer requests to Wells Fargo to close those accounts.

47.      Customers have difficulty reporting unauthorized activity. Reaching the correct representative is no guarantee the unauthorized account will be remedied, as complaining customers often never receive return calls from Wells Fargo.

48.     Wells Fargo knew, or in the exercise of reasonable care should have known, that its employees would not report the complaints, because upon information and belief, Wells Fargo executives were more concerned with profit and the "gr-eight" program.

49.     Wells Fargo requires that all new customer accounts be approved by a branch manager or assistant manager, thereby providing Wells Fargo management with a clear record of the number and types of accounts opened for each customer.

50.     Despite Wells Fargo's knowledge of gaming by its employees, it has done little, if anything, to terminate these practices, nor to reform the business model it created that has fostered them. While Wells Fargo has made a few minor changes to its policies, and has terminated a handful of employees, those efforts have been, at most, cosmetic, and ultimately benefit Wells Fargo by providing them with plausible deniability. However, the policies that encourage these tactics continue, and employees who engage in them continue to be rewarded monetarily, and even promoted. Wells Fargo has not altered its quota system, nor has it reduced the illegal fraudulent activities, identity theft, manipulation of processing customer debit card purchases to maximize overdraft fees, et al.

51.     Wells Fargo has a plethora of fines, refusal to follow regulatory Orders, DOJ settlement agreements, because the United States Government decided it is "to big to fail" it can do whatever it wants and uses interest free money from the United States and the customers to pay judgments because they make so much money, it doesn't really effect their role in the US.

52.     To the extent arbitration provisions exist between customers and Defendants, enforcement of such arbitration provisions have been effectively waived by Defendants' actions towards settling other similar cases and related claims as reported by numerous national news agencies.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action on their own behalf, and on behalf of all other persons similarly situated ("the Class"). The Class that Plaintiffs seek to represent is:

a.     All persons who had checking, savings, brokerage accounts, financial advisors, mortgages, or used any of Wells Fargo's banking services beginning on a date

unknown to Plaintiffs, but within the four years preceding the filing of this Complaint. Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendants.

   b.   All persons who purchased services from Wells Fargo not during the affected time period, but whose identifying information was stored on Wells Fargo's database. Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendants.

   c.   All persons who have been financially harmed or damaged because of Wells Fargo's fraudulent conduct, had improper fees assessed against their accounts, improper overcharges, had their accounts bundled, were sandbagged, or victims of pinning, subjected to financial harm or damages, loss of time, bank charges, late fees, and/or other miscellaneous costs and damages. Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of these Defendants.

54.   The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, it is in the hundreds of thousands.

55.   There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiffs claims are typical of the members of the Class, and Plaintiffs can fairly and adequately represent the interests of the Class.

56.   This action satisfies the requirements of Federal Rules of Civil Procedure, Rule 23(b)(3) because it involves questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including, but not limited to:

   a.   Whether Defendants, jointly and severally, unlawfully used, maintained, lost or disclosed Class members' personal and/or financial information;

b.      Whether Wells Fargo created a hostile working environment which fostered and rewarded fraudulent actions by its employees.

c.      Whether all Defendants' conduct was negligent, and/or grossly negligent;

d.      Whether all Defendants acted willfully and/or with oppression, fraud, malice, or indifference to the consequences to Plaintiffs;

e.      Whether all Defendants' conduct constituted intrusion;

f.      Whether Defendants' conduct constituted public disclosure of private facts;

g.      Whether all Defendants' conduct constituted misappropriation of likeness and identity;

h.      Whether all Defendants' conduct violated Class members' California Constitutional Right to Privacy;

i.      Whether all Defendants' conduct constituted bailment and breach of contract;

j.      Whether all Defendants' conduct constituted conversion;

k.      Whether Plaintiffs and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief;

l.      Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief;

m.      Whether Wells Fargo Management engaged in theft of customers funds.

57.      Plaintiffs' claims are typical of those other Class members who have likewise been subjected to financial harm or damages, loss of time, bank charges, and late fees and/or other miscellaneous costs and damages.

58.      Plaintiffs will fairly and accurately represent the interests of the Class.

59.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants and would lead to repetitive adjudication of common questions of law and fact. Accordingly, class treatment is superior to any other method for adjudicating the controversy. Plaintiffs know of no difficulty that

will be encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

60.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

61.     Defendants have acted or refused to act on grounds that apply generally to the class, as alleged above, and certification is proper under Rule 23(b)(2).

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE STORED COMMUNICATIONS ACT

62.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

63.     The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

64.     Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

65.     The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id*. at § 2510(15).

66.     Through its payment processing equipment, Wells Fargo provides an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies, or banks.

A&P AUDET & PARTNERS LLP

67.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, even after Wells Fargo was aware that customers' private and confidential information had been compromised by its own employees, Wells Fargo has knowingly divulged customers' private financial information that was communicated to financial institutions, while in electronic storage in Wells Fargo's data systems.

68.     Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

69.     The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. § 2711(2).

70.     An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photo-optical or photo-electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(4).

71.     Wells Fargo provides onsite and remote computing services to its customers and the public by virtue of its computer processing services, including, but not limited to, banking services, consumer credit and debit card payments, etc. which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photo-optical or photo-electric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer private financial information.

72.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, and requiring scrutiny of their own employees, Wells Fargo has knowingly divulged customers' private financial information that was carried and maintained on Wells Fargo's computing data bank services.

73.     As a result of Wells Fargo's conduct described herein and its violations of Sections 2702(a)(1) and (2)(A) of the SCA, Plaintiffs and Class Members have suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their private confidential information; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; (iv) and deprivation of the value of their private information, for which there is a well-established national and international market. Plaintiffs, on their own behalf and on behalf of the Class Members, seek an order awarding themselves and the Class Members the maximum statutory damages available under 18 U.S.C. § 2707, in addition to the cost for 3 years of credit monitoring services.

74.     WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants, and awarding Plaintiffs and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

## INVASION OF PRIVACY

75.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

76.     Plaintiffs, and the other Class Members, had a reasonable expectation of privacy in the private information Defendants Wells Fargo obtained from them in opening accounts. Said information was provided in a fiduciary capacity, and Wells Fargo and its employees mishandled and/or failed to protect said information, and knowingly violated their fiduciary duties.

77.     By failing to keep Plaintiffs private information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendants invaded Plaintiffs privacy by:

      a.     Intruding into Plaintiffs private affairs in a manner that would be highly offensive to a reasonable person;

b.      Publicizing private facts about Plaintiffs, which is highly offensive to a reasonable person;

c.      Using and appropriating Plaintiffs identity without Plaintiffs' consent;

d.      Violating Plaintiffs right to privacy under California Constitution, Article 1, Section 1, through the improper use of Plaintiffs private information properly obtained for a specific purpose for another purpose, or the disclosure of it to some third party.

78.     On information and belief, Plaintiffs allege that Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs position would consider Defendants' actions highly offensive.

79.     Plaintiffs assert that Defendants, jointly and severally invaded Plaintiffs and the Class Members right to privacy and intruded into Plaintiffs private affairs by misusing and/or disclosing Plaintiffs private information without their informed, voluntary, affirmative and clear consent, and/or failed to properly secure confidential information by encouraging employees to abuse the customers private information for purposes of promotions, personal gains, and monetary remuneration.

80.     Plaintiffs allege that Wells Fargo had been aware of the employee violations for over a year before taking any action, but failed to take action in lieu of maximizing financial gains from the employees' unethical behavior that Wells Fargo was fully aware of, and thereby exposed Plaintiffs to added, unnecessary risk. From 2011 the bank opened more than 2 million deposit and credit card accounts that may not have been authorized.1

81.     Plaintiffs contend that as a direct and proximate result of such misuse and disclosures, Plaintiffs reasonable expectations of privacy in their private information was unduly frustrated and thwarted, and that the Defendants' conduct amounted to a serious invasion of Plaintiffs' and the Class Members' privacy interests.

82.     Wells Fargo employees pushed checking account customers into savings, credit and online accounts that could generate fees. Bank employees were told that the average customer tapped six financial tools but that they should push households to use eight products, according to

the complaint. The bank opened more than 2 million deposit and credit card accounts that may not have been authorized, according to the CFPB.

83.     Plaintiffs assert Defendants had a duty to protect Plaintiffs private information and that in failing to protect Plaintiffs private information, and in misusing and/or disclosing Plaintiffs private information, Defendants have acted with malice, oppression and in conscious disregard of Plaintiffs and the Class members' rights to have such information kept confidential and private. Plaintiffs, accordingly, seek an award of compensatory damages, nominal damages, punitive damages, attorneys' fees, expert witness fees, and associated court costs on their behalf as well as on behalf of the Class.

## THIRD CLAIM FOR RELIEF

### NEGLIGENCE

84.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

85.     Under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, Wells Fargo had a duty to protect and keep sensitive personal information that it obtained from customers that conducted banking, financial, credit card and debit card transactions, or other services, secure, private, and confidential.

86.     Wells Fargo violated the Gramm-Leach-Bliley Act by: (a) not adequately safeguarding Plaintiffs' and the Class Members' sensitive personal information, (b) encouraging and rewarding its employees for violating privacy provisions of the Act in order to maximize financial gain; and (c) failing to follow applicable state law designed to protect cardholder information.

87.     Wells Fargo's encouragement and reward to employees for violations of privacy provisions, and those accompanying rules and regulations, and to follow applicable state law constitutes conspiracy and negligence per se.

88.     As a direct and proximate result of Wells Fargo's conduct alleged herein, Plaintiffs and Class Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their private and confidential information; (ii) out-of-pocket expenses incurred to

mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the data breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; (iv) and deprivation of the value of their private and confidential information, for which there is a well-established national and international market.

89. As a direct and proximate result of Defendant's negligence per se Plaintiffs and Class Members were damages and harmed to their detriment and seek the award of actual damages, compensatory damages, attorneys' fees, and such other and further damages as this Court deems just and reasonable.

90. WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Wells Fargo Defendants, and awarding Plaintiffs and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT AND BAILMENT

91. Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

92. Plaintiffs and the Class members delivered and entrusted their Private information to Defendants for the sole purpose of receiving services from Defendants, including, but not limited to, financial advisors, checking accounts, savings accounts, general banking services, including brokerage services all with having the ability to engage in financial transactions in safety.

93. Wells Fargo made representations and entered into contractual and implied contractual relations regarding Wells Fargo's duty to safeguard Plaintiffs private information, including, but not limited to Wells Fargo's representations as set forth by Wells Fargo.

94. Nowhere in the Wells Fargo Privacy Policy, does it allow Defendants to access Plaintiffs personal information for Wells Fargo to open accounts in Plaintiffs names without

notifying customers, nor obtain emails, using customers' names, or fraudulently conduct financial transactions without ever notifying Plaintiffs.

95.     Plaintiffs and Class Members entered into valid and enforceable agreements with Defendants whereby Defendants promised to provide goods or services to Plaintiffs and Class Members, and Plaintiffs and Class Members agreed to pay for those goods or services, including payment made with debit or credit cards.

96.     Plaintiffs were never notified that Wells Fargo and its employees received incentives for "gr-eight" participation, or using Class Members private information to exploit Class Members for the monetary advantage of Wells Fargo or their employees, which private information included, inter alia, social security numbers which Wells Fargo classifies as "confidential" information.

97.     A material part of Wells Fargo's promise to provide services to Plaintiffs and Class Members was to adequately protect their personal and confidential information, and that Defendants intentionally, maliciously, and with intent to defraud, used Plaintiffs and Class Members social security numbers to open factious accounts, bundle products, sandbag, PIN, or in other Gaming operations engaged in by Defendants, including executives, who aided and abetted Defendants in hiding from regulators the fraudulent activity engaged in by Defendants.

98.     Plaintiffs contend that Wells Fargo operated in a fiduciary position of trust, which position held them to a higher standard of performance that other corporations.

99.     Social Security numbers are classified as "Confidential" information under the Wells Fargo Information Security Policy. As such, Social Security numbers may only be accessed by and disclosed to Wells Fargo team members and others with a legitimate business "need to know" in accordance with applicable laws and regulations. Social Security numbers, whether in paper or electronic form, are subject to physical, electronic, and procedural safeguards, and must be stored, transmitted, and disposed of in accordance with the provisions of the Information Security Policy applicable to Confidential information. These restrictions apply to all Social Security numbers collected or retained by Wells Fargo in connection with customer, employee, or other relationships.

100.    In its privacy policy, Wells Fargo expressly promised Plaintiffs and Class Members that it would protect Plaintiffs' and Class Members' personal and confidential information.

101.     Plaintiffs contend that the contracts required Wells Fargo to safeguard Plaintiffs' and Class Members' private and confidential information to prevent its disclosure and/or unauthorized access.

102.     Plaintiffs and Class Members agreed, inter alia, to provide their private and confidential information to Wells Fargo, in exchange for Wells Fargo's agreement to, among other things, protect their private and confidential information.

103.     Wells Fargo failed to protect and safeguard Plaintiffs' and the Class Members' private and confidential information, as agreed to between the parties, and that this failure to protect the confidential and private information of Plaintiffs and Class Members was known to the highest ranking executive members of Wells Fargo, which may have included Carrie Tolstedt.

104.     Wells Fargo's failure to meet these promises and obligations constitutes an express breach of contract.

105.     Wells Fargo breached the contracts by failing to implement sufficient security measures to protect Plaintiffs' and the Class Members' private and confidential information, as described herein, as well as actively "mining" customers private information to use as Wells Fargo saw fit in order to maximize its own profit.

106.     Wells Fargo's breach of its fiduciary duty to safeguard the confidential and private information of Plaintiffs and Class Members, and allowing access to its data security by Wells Fargo employees, constituted a breach of contract and Defendant's promise to supply adequate security and maintain customers' privacy, when in fact Wells Fargo neither supplied adequate security nor instituted adequate procedures to maintain customers' privacy.

107.     Plaintiffs further allege that as a direct and proximate result of Wells Fargo's breach, Plaintiffs and Class Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their private and confidential information; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the data breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; (iv) and deprivation of the value of their private and confidential information, for which there is a well-established national and

1    international market. These damages were within the contemplation of Wells Fargo and the

2    Plaintiffs at the time that they contracted.

3          108.    Plaintiffs contend that Wells Fargo breached its duty to safeguard their customers'

4    privacy, and thereafter intentionally failed to inform Plaintiffs and Class members of the data

5    breach/intentional theft and use of confidential information by Defendants.

6          109.    The California Supreme Court and other courts have held that breach of contract,

7    standing alone, does not call for punitive damages even if intentional and unjustified, but such

8    damages are allowable if there is some independent tort indicating malice, fraud or wanton

9    disregard for the rights of others. Upon information and belief, Wells Fargo management

10   encouraged the theft by outrageous demands on employees, and executive officers being fully

11   aware of the fraudulent activity transpiring under various programs to boost profits such as the "gr-

12   eight" programs, calls for punitive damages. Plaintiffs contend that likewise Wells Fargo's failure

13   to implement tighter security and oversight of corporate activities, coupled with its activation of

14   programs which not only encouraged the illegal activity, but also rewarded the activity, call for

15   punitive damages.

16         110.    The wanton refusal to notify customers of the illegal, unethical activity of Wells

17   Fargo for over a year since Wells Fargo was sued by Los Angeles, warrants the imposition of

18   punitive damages against Defendants pursuant to the independent intentional torts committed by the

19   Defendants.

20         111.    During the time of bailment, Defendants owed Plaintiffs and the Class members a

21   duty to safeguard their information properly and maintain reasonable security procedures and

22   practices to protect such information (as set forth in Wells Fargo's privacy policies).

23         112.    Plaintiffs allege Defendant Wells Fargo intentionally breached this duty by allowing

24   access to the confidential information and allowing its own employees to fraudulently use

25   customers' private and confidential information.

26         113.    Plaintiffs assert that as a result of these breaches of duty, breach of contract, and

27   breach of bailment, Plaintiffs and the Class members have suffered harm and damage in an amount

28   to be proven at the time of trial.

114.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for entry of judgment against Defendants Wells Fargo, and awarding Plaintiffs and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**

**CONVERSION**

115.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

116.    In order to benefit from Wells Fargo's services, Plaintiffs and Class Members were required to disclose their private and confidential information to Wells Fargo.

117.    By providing Wells Fargo their private and confidential information, and upon Wells Fargo's acceptance of such information, Plaintiffs and Class Members entered into implied contracts with Wells Fargo whereby Wells Fargo was obligated to take reasonable steps to secure and safeguard that information, including compliance with federal banking and security laws.

118.    A portion of the services purchased from Wells Fargo by Plaintiffs and Class Members necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of Plaintiffs private and confidential information. Because Plaintiffs and Class Members were denied privacy protections that they paid for and were entitled to receive, Plaintiffs and Class Members incurred actual monetary damages in that they overpaid for the services purchased from Wells Fargo, including the overcharges on accounts, manipulation of accounting to obtain income for Wells Fargo.

119.    Plaintiffs and Class Members have suffered additional injury in fact and actual damages, including monetary losses, arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts.

120.    Plaintiffs and Class Members suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Wells Fargo's wrongful conduct, particularly given the incidents of actual misappropriation from Class Members' financial accounts, as detailed above.

CLASS ACTION COMPLAINT

121.    A meeting of the minds occurred, as Plaintiffs and Class Members agreed to provide their private and confidential information and to pay Wells Fargo in exchange for Wells Fargo's agreement to, inter alia, provide services and otherwise take reasonable steps to protect Plaintiffs' and Class Members' private and confidential information.

122.    Without such implied contracts, Plaintiffs and Class Members would not have provided their private and confidential information to Wells Fargo.

123.    Wells Fargo failed to take reasonable steps to safeguard Plaintiffs' and Class Members' private and confidential information, and that as a result thereof, Wells Fargo allowed authorized and potentially unauthorized access to Plaintiffs' and Class Members' private and confidential information, and failed to take reasonable steps to safeguard that information, Wells Fargo breached its implied contracts with Plaintiffs and Class Members.

124.    As a result of Wells Fargo's breach, Plaintiffs and Class Members suffered damages in the amount of the difference between the price they paid for Wells Fargo's services as promised and the actual diminished value of its services.

125.    Additionally, as a result of Wells Fargo's breach, Plaintiffs and Class Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their private and confidential information; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the data breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; (iv) and deprivation of the value of their private and confidential information, for which there is a well-established national and international market. These damages were within the contemplation of Wells Fargo and the Plaintiffs at the time that they contracted.

126.    Plaintiffs and Class members were the owners and possessors of their private information. As the result of Defendants' wrongful conduct, Defendants have interfered with the

127.    Plaintiffs and Class members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

128.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class members suffered injury, damage, loss or harm and therefore seek compensatory damages.

129.    In converting Plaintiffs and Class Members private information, Defendants have acted with malice, oppression and in conscious disregard of the Plaintiffs and Class members' rights. Plaintiffs, accordingly, seek an award of punitive damages on behalf of the Class.

130.    Defendants owed Plaintiffs a fiduciary duty and by allowing employees to steal their information, Defendants breached this fiduciary duty, as evidenced by numerous federal fines for improper banking activities.

131.    Plaintiffs and Class members have suffered injury in fact and actual damages including lost money and property as a result of Wells Fargo's violations of the consumer fraud statutes.

132.    Plaintiffs and the other Class members' injuries were proximately caused by Wells Fargo's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

133.    By this conduct, Wells Fargo violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the several States and the District of Columbia, as set forth above, whose laws do not materially differ from that of California, and do not conflict with each other for purposes of this action.

134.    Additionally, despite the disclosure and dissemination of Plaintiffs and the Class members' private and confidential information occurring on a regular basis for over five (5) years, Wells Fargo, in violation of California's laws, failed to expeditiously and without unreasonable delay, notify Plaintiffs and the Class Members of the unlawful and unauthorized disclosure and dissemination of their private, personal and confidential information.

135.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants, and awarding Plaintiffs and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

CLASS ACTION COMPLAINT

1

**SIXTH CLAIM FOR RELIEF**

2

**INTENTIONAL VIOLATIONS OF THE FCRA**

3

136.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of

4

this Complaint as if fully restated herein.

5

137.    The Fair Credit Reporting Act ("FCRA") requires consumer reporting agencies to

6

adopt and maintain procedures for meeting the needs of commerce for consumer credit, personnel,

7

insurance and other information in a manner fair and equitable to consumers while maintaining the

8

confidentiality, accuracy, relevancy and proper utilization of such information. 15 U.S.C. § 1681(b).

9

138.    The FCRA allows for a private right of action against any reporting agency for the

10

negligent or willful violation of any duty imposed under the statute.

11

139.    The FCRA defines a "consumer reporting agency" as: Any person which, for

12

monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the

13

practice of assembling or evaluating consumer credit information or other information on

14

consumers for the purpose of furnishing consumer reports to third parties, and which uses any

15

means or facility of interstate commerce for the purpose of preparing or furnishing consumer

16

reports. 15 U.S.C. § 1681(a)(f).

17

140.    FCRA defines a "consumer report" as: "[A]ny written, oral, or other communication

18

of any information by a consumer reporting agency bearing on a consumer's credit worthiness,

19

credit standing, credit capacity, character, general reputation, personal characteristics, or mode of

20

living which is used or expected to be used or collected in whole or in part for the purpose of

21

establishing the consumer's eligibility for credit or insurance to be used primarily for personal,

22

family, or household purposes; employment purposes, or any other purpose authorized under 15

23

U.S.C. § 1681(b). 15 U.S.C § 1681(a)(d).

24

141.    Wells Fargo is a consumer reporting agency as defined under the FCRA because

25

Wells Fargo through third parties, for monetary fees, regularly engages, in part, in the practice of

26

assembling or evaluating consumer credit information or other information on consumers for the

27

purpose of furnishing consumer reports to third parties and/or uses interstate commerce for the

28

purpose of preparing and/or furnishing consumer reports.

142.    As a consumer reporting agency, Wells Fargo was (and continues to be) required to adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personnel, insurance and other information (such as Plaintiffs' and other Class Members' private and confidential information) in a manner fair and equitable to consumers, while maintaining the confidentiality, accuracy, relevancy, and proper utilization of such information. Defendants, violated FCRA by failing to adopt and maintain such protective procedures which, in turn, directly and/or proximately resulted in the theft of Plaintiffs' and Class Members' private and confidential information and its wrongful dissemination.

143.    On information and belief, Wells Fargo knowingly failed to adequately implement these proactive actions to secure and protect Plaintiffs' and Class Members' private and confidential information, and/or put itself in a position to immediately notify Plaintiffs and Class Members about the data breach.

144.    As a direct and/or proximate result of Wells Fargo's willful and/or reckless violations of the FCRA as described above, Plaintiffs' and Class Members' private and confidential information was stolen and made accessible to unauthorized third parties.

145.    As a direct and/or proximate result of Wells Fargo's willful and/or reckless violations of the FCRA, as described above, Plaintiffs and Class Members were (and continue to be) damaged in the form of, without limitation, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non- economic harm.

146.    Plaintiffs and Class Members, therefore, are entitled to compensation for their actual damages including, (i) actual damages resulting from the identity theft; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the data breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iv) deprivation of the value of their private and confidential information, for which there is a well-established national and international market; (v) anxiety and emotional distress; and (vi) statutory damages of not less than $100, and not

1   more than $1,000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15

2   U.S.C. §1681n(a).

3       147.   WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for

4   entry of judgment jointly and severally against Defendants, and awarding Plaintiffs and the Class

5   compensatory damages, statutory damages, treble damages, punitive damages, and reasonable

6   attorney's fees and costs; and such other and further relief as this Court deems just and proper.

7                          **SEVENTH CLAIM FOR RELIEF**

8                       **NEGLIGENT VIOLATIONS OF THE FCRA**

9       148.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of

10  this Complaint as if fully restated herein.

11      149.   In the alternative to Count Seventh, above, Wells Fargo negligently violated the

12  FCRA by failing to adopt and maintain procedures designed to protect and limit the dissemination

13  of Plaintiffs' and Class Members' private and confidential information for the permissible purposes

14  outlined by the FCRA which, in turn, directly and/or proximately resulted in the wrongful

15  dissemination of Plaintiffs' and Class Members' private and confidential information.

16      150.   Wells Fargo's action, by its pressure on employees, and refusing to enforce fiduciary

17  duties because a fine is cheaper to pay than the profits they obtained, was reasonably foreseeable

18  that Wells Fargo's failure to implement and maintain procedures to protect and secure Plaintiffs'

19  and Class Members' private and confidential information would result in the unauthorized use by

20  Wells Fargo of its customers' private and confidential information for no permissible purpose under

21  the FCRA.

22      151.   As a direct and/or proximate result of Wells Fargo's negligent violations of the

23  FCRA, as described above, Plaintiffs' and Class Members' private and confidential information

24  was essentially stolen and made accessible for unauthorized purposes by Wells Fargo executives

25  and employees.

26      152.   As a direct and/or proximate result of Wells Fargo's negligent violations of the

27  FCRA, as described above, Plaintiffs and Class Members were (and continue to be) damaged in the

28

A&P | AUDET & PARTNERS LLP

form of, without limitation, actual identity theft, expenses for credit monitoring and identity theft insurance, anxiety, emotional distress, loss of privacy, and other economic and noneconomic harm.

153. Plaintiffs and Class Members, therefore, are entitled to compensation for their actual damages, including, (i) actual damages resulting from the identity theft; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the data breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iv) deprivation of the value of their private and confidential information, for which there is a well-established national and international market; (v) anxiety and emotional distress; and (viii) attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. § 1681o(a).

154. WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendant Wells Fargo, and awarding Plaintiffs and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT

155. Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

156. The Declaratory Judgment Act ("DJA") states: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

157. In the case at hand, there is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, due to the imminence of harm facing Plaintiffs and Class Members. As set forth above, Class Members have already

suffered identity theft and damages as a result of the data breach, and the perpetrators are still at large with Class Members' private and confidential information.

158.    Plaintiffs seek a declaration that Wells Fargo has breached a contract between those entities and Plaintiffs and Class Members by allowing unauthorized individuals were allowed access to personal financial data, an/or authorized parties engaged in fraudulent activities in accessing and misusing fiduciary, confidential information.

159.    Plaintiffs further seek a declaration that due to the imminence and likelihood of harm to Plaintiffs and Class Members, Wells Fargo be ordered to pay for mitigation in the form of legitimate and adequate credit monitoring, identity theft protection, and identity theft insurance, and also be ordered to indemnify Plaintiffs and Class Members for future harm.

## NINTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

160.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

161.    Plaintiffs and members of the Class paid Wells Fargo excessive fees, fines, collection costs, had their personal information misused by Wells Fargo for the benefit of Wells Faro and its employees.

162.    Upon information and belief, executives and employees of Wells Fargo received bonuses in the millions of dollars, including severance fees of over one hundred million dollars, for their participation in the "gr-eight" program where Plaintiffs were the victims of fraudulent activities.

163.    Defendant and its employees have been unjustly enriched at the expense of Plaintiffs and the Class and its retention of this benefit under the circumstances would be inequitable.

164.    Plaintiffs seek an order requiring Defendant to make restitution to them and the other members of the Class, including a claw-back provision for those who profited personally from the illegal behavior.

**TENTH CLAIM FOR RELIEF**

**VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDY ACT**

165.   Plaintiffs incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

166.   California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices intended to result, or which results, in the sale or lease of goods or services to any consumer.

167.   Plaintiffs and the Class were, and continue to be, at all times material to the Complaint, "consumers" and "persons" as defined by the Cal. Civ. Code § 1761. Plaintiffs, as well as the Class, purchased and/or used Wells Fargo products for personal and/or family and/or household use.

168.   As alleged throughout this Complaint, Wells Fargo engaged in unfair, deceptive, and/or unlawful marketing in violation of Civ. Code § 1770(a) by providing customers with false, misleading, deceptive, and/or unlawful statements about the costs, benefits, and policies regarding Wells Fargo financial products.

169.   The false, misleading, deceptive and/or unlawful statements about its products were material misstatements and/or omissions that caused consumers to believe, falsely, that, inter alia, they needed to purchase more Wells Fargo products in order to receive specific benefits of other products, when this was not true.

170.   Plaintiffs and Class Members were exposed to and/or relied upon Wells Fargo's unfair, deceptive, and/or unlawful marketing practices.

171.   As described above, Wells Fargo also engaged in unfair or deceptive acts or practices by opening accounts and financial products in the names of customers without their knowledge or consent.

172.   Plaintiffs and the Class have lost money and incurred significant, unreasonable stress as a result of Wells Fargo's unfair, deceptive, and/or unlawful practices pursuant to Cal. Civ. Code § 1770(a).

173.    The conduct described herein by Wells Fargo is continuing. Plaintiffs will promptly demand the conduct cease in a Consumer Legal Remedies Act letter. The conduct was done for profit as a deliberate corporate policy rather than an isolated incident, and was morally wrong, callous, and/or oppressive.

174.    As a result of Wells Fargo's violations of the California's Consumer Legal Remedies Act, Plaintiffs seek an order of this Court permanently enjoining Wells Fargo from perpetrating its unfair, deceptive, and/or unlawful practices. If Wells Fargo does not take action to cease its unfair, deceptive, and/or unlawful practices within thirty days of being served with the notice letter, Plaintiffs will seek leave to amend this Complaint to request, in addition to an order enjoining Wells Fargo from continuing its unfair, deceptive, and/or unlawful practices, an order awarding, inter alia, Plaintiffs and the Class actual damages, restitution, attorneys' fees and costs, and for such other relief as set forth below.

175.    Plaintiffs reserve the right to amend this Complaint to seek punitive damages.

## ELEVENTH CLAIM FOR RELIEF

## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

176.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

177.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's Unfair Competition Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the ambit of California's Unfair Competition Law.

178.    Wells Fargo engages in substantial sales and marketing of its financial products and services within the State of California.

179.    Because of Wells Fargo unlawful and unfair business practices, Plaintiffs and the California Subclass were unfairly, unlawfully, and/or fraudulently misled into purchasing and/or maintaining more Wells Fargo products than they would otherwise have purchased and/or

A&P AUDET & PARTNERS LLP

1   maintained. Plaintiffs and Class Members relied, to their detriment, on Wells Fargo's false

2   representations, detailed above, regarding the costs, benefits, and policies governing Wells Fargo's

3   products and accounts. The Class was uniformly exposed to Wells Fargo's unlawful and unfair

4   business practices.

5       180.    Additionally, as detailed above, Wells Fargo also engaged in unfair, unlawful, and/or

6   fraudulent acts or practices by opening accounts and financial products in the names of customers

7   without their knowledge or consent.

8       181.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for

9   entry of judgment jointly and severally against Defendants, and awarding Plaintiffs and the Class

10  equitable relief, damages, and reasonable attorney's fees and costs; and such other and further relief

11  as this Court deems just and proper.

12                          **TWELFTH CLAIM FOR RELIEF**

13              **VIOLATIONS OF CALIFORNIA'S CONSUMER RECORDS ACT**

14      182.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of

15  this Complaint as if fully restated herein.

16      183.    Plaintiffs bring this cause of action on behalf of California members of the Class.

17      184.    The California Legislature enacted Civil Code section 1798.81.5 "to ensure that

18  personal information about California residents is protected." The statute requires that any business

19  that "owns, licenses, or maintains personal information about a California resident . . . implement

20  and maintain reasonable security procedures and practices appropriate to the nature of the

21  information, to protect the personal information from unauthorized access, destruction, use,

22  modification, or disclosure."

23      185.    Wells Fargo is a "business" as defined by Civil Code section 1798.80(a).

24      186.    Each Plaintiff and member of the class is an "individual" as defined by Civil Code

25  section 1798.80(d) and a "customer" as defined by Civil Code section 1798.80(c).

26      187.    The information that Wells Fargo used in the gaming described in this Complaint

27  was "personal information" as defined by Civil Code sections 1798.80(e) and 1798.81.5(d), which

28  includes "information that identifies, relates to, describes, or is capable of being associated with, a

particular individual, including, but not limited to, his or her name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information."

188.    The misuse of that personal information by Wells Fargo and its employees to open unauthorized accounts or other "sales" was a "breach of the security system" of as defined by Civil Code section 1798.82(g).

189.    By failing to ensure that its employees did not misuse customers' personal information, Wells Fargo violated Civil Code section 1798.81.5(b), which requires businesses to implement and maintain reasonable security procedures for "personal information about California residents."

190.    By failing to immediately notify all affected Wells Fargo customers that their personal information had been misused by unauthorized persons to open unauthorized accounts, Wells Fargo violated Civil Code section 1798.82. Wells Fargo's failure to immediately notify customers of that misuse caused class members to suffer damages by, for example, forcing them to pay unauthorized fees or respond to collection agents.

191.    Plaintiffs seek all remedies available under Civil Code § 1798.84, including actual and statutory damages, equitable relief, and reasonable attorneys' fees. Because Wells Fargo encouraged violations of the Act, or was aware of the violations and did nothing, it acted willfully, intentionally, or recklessly, and Plaintiffs and the Class may recover a civil penalty of $3,000 per violation.

192.    Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues properly triable thereby.


Dated: October 31, 2016                    **AUDET & PARTNERS, LLP**

                                  By: /s/  *William Audet*
                                       William M. Audet (SBN 117456)
                                       S. Clinton Woods (SBN 246054)
                                       Ling Y. Kuang (SBN 296873)
                                       **AUDET & PARTNERS, LLP**
                                       711 Van Ness Avenue, Suite 500
                                       San Francisco, CA 94102-3275
                                       Telephone:  (415) 568-2555
                                       Facsimile:   (415) 568-2556
                                       Emails:      waudet@audetlaw.com
                                                    cwoods@audetlaw.com
                                                    lkuang@audetlaw.com

                                       *Counsel for Plaintiff Alex Chernavsky, on behalf*
                                       *of himself and all others similarly situated*